**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TIMOTHY K. BADKE,**

    **Plaintiff,**

**v.**                                                    **Case No.  8:04-cv-1166-T-23TBM**

**CERTIFIED RECOVERY SYSTEMS,**
**LLP,**[1]

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a Report and Recommendation on **Defendant's Motion for Partial Summary Judgment Against Plaintiff** (Doc. 19).  By its motion, Defendant seeks summary judgment as to the First and Second Claims for Relief of the Second Amended Complaint (Doc. 24).  Plaintiff filed a response in opposition (Doc. 26).

I.

Plaintiff Timothy K. Badke is a resident of Florida and the owner of Sysworks Corp., a retailer for the Dish Network satellite systems.  Plaintiff also owned 1st Class Communications, which is no longer in business.  According to Plaintiff's allegations, in February 2004, he was denied credit under favorable terms while attempting to refinance his

---

[1] Plaintiff's First Amended Complaint dropped Key Jayne and Billy Jayne as defendants.  See (Doc. 8); see also (Doc. 7).

home. At this time, he discovered negative information on his consumer credit file that was reported by Defendant Certified Recovery Systems, LLP (hereinafter "CRS"). CRS is a Texas limited liability partnership in the business of the collection of bad debts from debtors throughout the United States, including the state of Florida, on behalf of various commercial companies. It appears undisputed that CRS is not registered as a collection agency with the State of Florida.

By letter dated March 24, 2004, Plaintiff wrote to CRS and requested validation of the debt reported by CRS on his consumer credit report. See (Doc. 8, Ex. A). By its letter dated March 26, 2004, and addressed to Plaintiff and Sysworks Corp., CRS replied that the original creditor was WoodForest Bank, the debtor was Plaintiff, on account number 5428140004558755, in the amount of $701.00. See id. at Ex. B; see also (Doc. 26, Ex.).

Plaintiff asserts that because he did not recognize the name of the creditor or recall owing a debt in that amount, he again wrote to CRS in an attempt to obtain more information about the debt. CRS did not reply to this second correspondence. Plaintiff then sent another letter to CRS and advised CRS that if they continued to report the negative information to his consumer credit report and refused to verify the debt, he would file suit against them.[2]

In April 2004, Plaintiff filed this action *pro se* in the County Court of Manatee County. See (Doc. 3). Defendants removed the action to this court. See (Doc. 1). Defendants filed a motion to dismiss the initial Complaint. See (Doc. 4). During the pendency of this motion, Plaintiff retained counsel and filed a First Amended Complaint (Doc. 8), and the court denied as moot the motion to dismiss. See (Doc. 9). Defendant CRS filed a motion to dismiss (Doc. 10) the First Amended Complaint. The court entered an Order

---

[2]Neither of these two letters is part of the record.

2

denying the motion; directing the parties to conduct limited discovery by October 1, 2004, regarding whether the underlying debt is a consumer debt; and directing the Defendant to answer the Amended Complaint or move for summary judgment on or before October 22, 2004. See (Doc. 12).

Defendant filed the instant motion seeking partial summary judgment as to Plaintiff's claims brought pursuant to the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §§ 1692-1692o, and Florida's Consumer Collection Practices Act (hereinafter "FCCPA"), Fla. Stat. ch. 559.55-559.785.[3] By his First Claim for Relief of the Second Amended Complaint, Plaintiff alleges that CRS violated the FDCPA by failing to provide an initial contact letter advising Plaintiff of the debt and providing him an opportunity to dispute the debt and by failing to verify the name or the address of the original creditor upon Plaintiff's request.[4] See 15 U.S.C. § 1592g(a), (b). By his Second Claim for Relief, Plaintiff alleges that CRS violated the FCCPA by conducting the business of a debt collector without registering with the state of Florida Office of Financial Services in violation of § 559.553; by failing to notify Plaintiff that it has been assigned the right to collect the alleged

---

[3]During the pendency of the motion, with leave of court, Plaintiff filed his Second Amended Complaint (Doc. 24). This pleading amended the First Amended Complaint (Doc. 8) by removing the Plaintiff's claim for Defamation (the Second Claim for Relief of the First Amended Complaint) and adding a claim (the Third Claim for Relief of Second Amended Complaint) under the Florida Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA"), Fla. Stat. ch. 501.201-501.213. Thus, the court will construe Defendant's motion as directed toward the First and Second Claims for Relief of Plaintiff's Second Amended Complaint, Plaintiff's claims under the FDCPA and FCCPA.

[4]The allegations in paragraphs 20 and 21 suggest that the claim is brought pursuant to 15 U.S.C. § 1692g. Plaintiff also alleges in paragraph 22 that CRS violated "15 U.S.C. [§] 1692(e) by illegally acting as a debt collector in the state of Florida without first registering with the Secretary of State and without registering with the Office of Financial Services." (Doc. 24 at ¶ 22).

3

debt within thirty days in violation of § 559.715; by employing a verification which was itself an attempt to collect a debt; and by attempting to collect a debt or take an action that it cannot legally take in violation of § 559.72(g).[5] In addition to seeking summary judgment on these counts, Defendant also requests that the court decline to exercise supplemental jurisdiction over Plaintiff's Third Claim for Relief brought under the FDUTPA.

    As grounds for summary judgment, Defendant argues that the undisputed evidence revealed through discovery supports that any debt at issue is a commercial debt rather than a consumer debt and therefore cannot serve as a basis for a claim for damages under either the FDCPA or the FCCPA.[6] Defendant further urges the court to decline to exercise supplemental jurisdiction on any remaining state law claims.[7] By his response (Doc. 26), Plaintiff complains that Defendant has failed to establish that any debt exists or that he is personally liable for it, or that CRS is an assignee of or agent for the owner of the debt such that it may lawfully seek to collect the debt. He contends the undisputed facts demonstrate that CRS did not provide any documents to verify the debt or its right to collect the debt and that CRS continued to report the bad debt even after he notified it that the debt was disputed.

---

[5] The FCCPA contains an enforcement provision that establishes a cause of action against out-of-state consumer debt collectors for attempting to collect consumer debts without first registering with the Florida Department of Banking and Finance. See Fla. Stat. ch. 559.565(1). Liability for a violation of this provision is, like violations of other provisions of the act, premised on a showing that the debt in question is a consumer debt as defined by the statute.

[6] CRS also disputes that the provisions of 15 U.S.C. § 1692(e) create a private cause of action for its alleged failure to register as a debt collector with the State of Florida, and it seeks summary judgment on the First Claim for Relief on this ground as well.

[7] Although the motion was initially directed toward Plaintiff's claim for defamation in the Second Claim for Relief of the First Amended Complaint, the Defendant argues that the court should likewise dismiss Plaintiff's claim under FDUTPA raised in the Third Claim for Relief of the Second Amended Complaint.

4

In response to the Defendant's request for the court to decline to exercise supplemental jurisdiction over its state claim, Plaintiff observes that it is "ironic" that Defendant first sought to make a federal case of this dispute by removing the pending small claims action to federal court, but (presumably) he opposes any remand.

## II.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining whether summary judgment is appropriate. Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. Celotex, 477 U.S. at 324; Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994). The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception. Perkins v. School Bd. of Pinellas County, 902 F. Supp. 1503 (M.D. Fla. 1995). It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to

5

be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." Hairston, 9 F.3d at 919 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).  The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried.  Hairston, 9 F.3d at 921; see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

### III.

#### A.

Defendant argues that because the underlying debt arises from a commercial transaction, Defendant's efforts to collect on that debt are not actionable under the FDCPA and FCCPA.  Congress enacted the FDCPA "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.  See Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (quoting Consumer Credit Protection Act, S. Rep. No. 95-382, at 1-2 (1977)); see also 15 U.S.C. § 1692(e).  Section 1692g requires debt collectors to provide consumers with written notice of debt and validation of the debt upon the consumer's dispute of the debt.  15 U.S.C. § 1692g.  The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to

judgment." 15 U.S.C.A. § 1692a(5).  By the plain terms of the statute, not all obligations to pay are considered "debts" within the meaning of the statute.  Hawthorne, 140 F.3d at 1371 (citing Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997)); Turner v. Cook, 362 F.3d 1219, 1226-27 (9th Cir. 2004).  When assessing whether the debt is "consumer debt" subject to the FDCPA, courts consider the substance of the transaction and the borrower's purpose in obtaining the loan.  Slenk v. Transworld Sys., Inc., 236 F.3d 1072 (9th Cir. 2001).  The FCCPA employs an identical definition of "debt" or "consumer debt" and likewise governs only consumer collection practices.  See Fla. Stat. ch. 559.55(1).

In support of its contention that the debt in question is a commercial debt outside the scope of the FDCPA, Defendant submits the Plaintiff's deposition testimony in which the Plaintiff acknowledged that his company, Sysworks Corp., held a merchant's account with Woodforest National Bank.  See Depo. of Timothy K. Badke (Doc. 20, Ex. at 16).  Although Plaintiff disputed the validity of the alleged debt, he acknowledged unequivocally that the only business he would have had with Woodforest National Bank would have been in connection with the business transactions for Sysworks Corp. and/or his other business, First Class Communications and not for himself personally.  Id. at 17-18.  In further support of the commercial nature of this account, Defendant submits the Merchant Bankcard Application/Agreement with Woodforest National Bank executed by Mr. Badke on behalf his business, 1st Class Communications and an accompanying blank check.  See (Doc. 31).[8]  The account number referenced on the face of the application corresponds with the account

---

[8] A copy of this credit application was originally filed as an exhibit to Plaintiff's deposition.  See (Doc. 20, Ex. at Ex. 1).  The exhibits to the deposition are not entirely legible, and apart from this resubmitted exhibit, are not relied on herein.

7

number identified by CRS in its response to the Plaintiffs first notice.  Additionally, CRS's reply correspondence, filed as Exhibit B to Plaintiff's First Amended Complaint, named both Plaintiff and Sysworks Corp. in the address.  See (Doc. 8, Ex. B).  To explain why the two businesses had the same account number, Plaintiff indicated that he may have notified the bank when the 1st Class Communications changed over to the corporation.  See Depo. of Timothy K. Badke (Doc. 20, Ex. at 13).

Despite his testimony, Plaintiff argues that he is entitled to the protections of the FDCPA and FCCPA because he is a consumer and because CRS reported negative information that was placed in his consumer credit report.  He also submits correspondence from Experian, one of the three major credit bureaus, indicating that it had verified the negative credit information reported by CRS.  See (Doc. 8, Ex. C).  However, he presents no evidence to refute the Defendant's showing that the alleged debt in question is commercial in nature.

While Plaintiff has demonstrated that the alleged debt appears on *his* consumer credit report and that the validity of the debt remains in dispute,[9] I find the undisputed testimony by the Plaintiff nonetheless establishes that the debt in question did not arise from a consumer transaction in which the money, property, insurance, or services are the subject of the

---

[9]Plaintiff cites to McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992), for the proposition that debt collectors are liable for violations of the FDCPA, regardless of whether a valid debt actually exists.  However, McCartney and other cases stating this proposition, see Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998), *cited in* Tyrell v. Robert Kaye & Assocs., P.A., 223 F.R.D. 686, 690 (S.D. Fla. 2004), hold only that the plaintiff need not prove invalidity of the debt in order to prevail on a claim under the FDCPA.  The plaintiff must nonetheless demonstrate that the alleged debt, regardless of its validity, falls within the statutory definition of the term in order for the Act to apply.  Therefore the validity of the alleged debt does not raise a genuine issue of material fact that would preclude entry of summary judgment in this instance.

8

transaction are primarily for personal, family, or household purposes.[10]  Indeed, the Plaintiff insists otherwise.  The evidence, even when viewed in a light most favorable to Plaintiff, establishes that the alleged debt in question is a commercial debt rather than a consumer debt.  As such, the debt falls outside the scope of the FDCPA and the FCCPA, and thus, CRS is entitled to summary judgment as to the First and Second Claims for Relief of the Second Amended Complaint.[11]

B.

Defendant also requests that the court decline to exercise supplemental jurisdiction on the remaining state claim and to dismiss the Third Claim for Relief of the Second Amended Complaint.  28 U.S.C. § 1367(c)(3) provides that the court may decline to exercise supplemental jurisdiction over related claims "if the district court has dismissed all claims over which it has original jurisdiction."  Id.  Upon my recommendation for entry of summary judgment on Plaintiff's underlying federal claim under the FDCPA and in consideration of the court's concerns for comity, judicial economy, convenience, fairness and the like, see Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999), I recommend that the court decline to

---

[10] Admittedly, this conclusion may lead to a harsh result.  At least one district court has found that a commercial debt can be transformed into a consumer debt by the debt collector's actions.  See Moore v. Principal Credit Corp., No. 4:96CV338-S-B, 1998 WL 378387, at *2 (N.D. Miss. Mar. 31, 1998) ("If the plaintiffs were not "consumers" at the time of purchase, then certainly they became 'consumers' for purposes of the Act once the telephone calls to their home began.").  However, other courts have rejected the holding in Moore, since it is antithetical to Congress's intent by defining a consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt.  See  Slenk, 236 F.3d at 1076; Edwards v. Beatty, Nos. 00-16235, 00-16473, 2001 WL 1104725, at *1 (9th Cir. Sept. 20, 2001); Holman v. West Valley Collection Servs., Inc., 60 F. Supp. 2d 935, 936-37 (D. Minn. 1999).

[11] Upon this conclusion, it is unnecessary to address the Plaintiff's claim based on the failure of CRS to register as a collection agent with the State of Florida.

9

exercise supplemental jurisdiction over the remaining state claim brought under the FDUTPA. This count should be dismissed without prejudice for refiling in state court. See McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1227 (11th Cir. 2002); Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1235 n.3 (11th Cir. 2002).

IV.

For the foregoing reasons, it is recommended that the court GRANT Defendant's Motion for Partial Summary Judgment Against Plaintiff (Doc. 19) as to First and Second Claims for Relief of the Second Amended Complaint. It is further recommended that the court DISMISS without prejudice the Third Claim for Relief.

> Respectfully submitted on this
> 16th day of May 2005.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record